## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Reginald Anthony Walton,                          Case No. 21-cv-1269 (KMM/ECW)

           Petitioner,

v.                                                            **REPORT AND**
                                                              **RECOMMENDATION**

Warden Fikes and FCI-Sandstone,

           Respondent.

This matter is before the Court upon Reginald Anthony Walton's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Dkt. 1). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

For the reasons discussed below, the Court recommends that the Petition be denied and that this action be dismissed with prejudice.

## I.    FACTUAL BACKGROUND

### A.    General Background

Petitioner Reginald Anthony Walton ("Walton" or "Petitioner") is currently incarcerated at the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone"). (Dkt. 10 ¶ 7.)

Petitioner was convicted and subsequently sentenced on February 13, 2015 for Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, in violation of 18 U.S.C. § 846. (Dkt. 10-2 at 2.) Petitioner was sentenced to a 186-month term of

imprisonment and currently has a projected release date of September 3, 2025, via a good conduct time release. (*Id.* at 1-2.)

**B.    Incident Leading to Discipline**

On September 10, 2019, at approximately 10:00 p.m., Walton, while incarcerated at Federal Correctional Institution in Fort Dix, New Jersey ("FCI-Fort Dix"), received a copy of Incident Report No. 3302174, for violations of Code 108, Possession, Manufacture, Introduction, or Loss of a Hazardous Tool, and Code 113, Possession of Any Narcotics, Marijuana, Drugs, Alcohol, Intoxicants, or Related Paraphernalia, Not Prescribed for the Individual by the Medical Staff. (Dkt. 10 ¶ 9; Dkt. 10-4.)

According to the Incident Report, on September 10, 2019, at approximately 1:30 p.m., the reporting officer was conducting a search of secured locker V01-010U assigned to Walton. (Dkt. 10-4 at 1.) The reporting officer, J. Salazar, discovered four cell phones in Walton's locker, concealed inside of two shampoo containers. (*Id.*) There was one black ZTE cell phone, one gray Samsung cell phone, one black Samsung cell phone, and one gold LG cell phone in total. (*Id.* at 1, 7.) Further, while conducting the search of Walton's assigned bunk area, the reporting officer discovered an Aquafina Water Bottle with manufactured alcohol, which was verified using Alco Sensor Type III. (*Id.* at 1, 6.) In addition, while searching Walton's bunk area, the reporting officer discovered an orange pill container with a bag of a green leafy substance inside a pair of boots. (*Id.* at 1, 7.) The reporting officer used a NIK Test Kit E to test the substance for narcotics, which produced a positive result. (*Id.* at 1, 9.)

**B.      Investigation of Incident Report**

The investigating officer read and delivered a copy of Incident Report 3302174 to Petitioner, and advised him of his rights during the disciplinary process.  (Dkt. 10 ¶ 11; Dkt. 10-4 at 1-2.)  Petitioner acknowledged understanding of his rights, declined to make a statement, and did not request any witnesses.  (Dkt. 10 ¶ 11; Dkt. 10-4 at 2.)  The investigating officer referred the Incident Report to the Unit Discipline Committee ("UDC") for an initial hearing.  (Dkt. 10 ¶ 4; Dkt. 10-4 at 2.)

**C.      Initial Hearing before the UDC**

On September 15, 2019, the UDC conducted an initial hearing on Incident Report No. 3302174.  (Dkt. 10 ¶ 12; Dkt. 10-4 at 1.)  During this initial hearing, Petitioner made the following statement: "I was at work.  Items had been found in common area. My locker was not locked.  I worked food service.  I have witness [sic] I was at work."  (Dkt. 10 ¶ 12; Dkt. 10-4 at 1.)  The UDC referred the matter to the Discipline Hearing Officer ("DHO") for a further hearing.  (Dkt. 10 ¶ 12; Dkt. 10-4 at 1.)  The Petitioner was advised on September 15, 2019 of his rights related to the disciplinary hearing, including:

> 1. The right to have a written copy of the charge(s) against you at least 24 hours prior to appearing before the Discipline Hearing Officer;
>
> 2. The right to have a full-time member of the staff who is reasonably available to present you before the Discipline Hearing Officer;
>
> 3. The right to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence in your behalf, provided institutional safety would not be jeopardized;
>
> 4. The right to present a statement or to remain silent. Your silence may be used to draw an adverse inference against you.  However, your silence alone may not be used to support a finding that you committed a prohibited act;

5. The right to be present throughout the discipline hearing except during a period of deliberation or when institutional safety would be jeopardized. If you elect not to appear before the DHO, you may still have witnesses and a staff representative appear on your behalf;

6. The right to be advised of the DHO's decision, the facts supporting that decision, except where institutional safety would be jeopardized, and the DHO's disposition in writing; and,

7. The right to appeal the decision of the DHO by means of the Administrative Remedy Procedure to the Regional Director within 20 calendar days of notice of the DHO's decision and disposition.

(Dkt. 10-5.) Petitioner acknowledged on September 15, 2019 that he was advised of these rights. (*Id.*) Petitioner was also presented on September 15, 2019 with a Notice of Discipline Hearing Before the DHO. (Dkt. 10 ¶ 12; Dkt. 10-6.) This notice advised Petitioner of his right to have a staff member present with him during the hearing, the right to call witnesses, and the right to present documentary evidence. (Dkt. 10 ¶ 12; Dkt. 10-6.) Petitioner requested Zavekas as a staff representative and sought to call inmates M.H and P. to testify that he was working when the incident transpired. (Dkt. 10 ¶ 12; Dkt. 10-6.)

On October 3, 2019, Walton waived his right to a staff representative and waived his right to present his two witnesses. (Dkt. 10 ¶ 13; Dkt. 10-7.)

On October 8, 2019, DHO Keith Hampton conducted a hearing on Incident Report No. 3302174, and issued a written report on June 24, 2020, a copy of which was provided to Petitioner on December 10, 2020. (Dkt. 10 ¶ 14; Dkt. 5-7 at 1, 3.) Petitioner waived his right to having a staff representative present and to presenting witnesses. (Dkt. 10-8

at 1.)  As such, Petitioner did not call any witnesses, including the inmates he originally designated, nor presented any documentary evidence.  (*Id.*)

Petitioner's only statement to the DHO was that: "My locker was not locked, and the stuff found inside is not mine."  (*Id.*)

Based on the "greater weight of fact/evidence" the DHO concluded Petitioner committed the prohibited acts of Codes 108 Possession of hazardous tool and 113 Possession of drugs/alcohol.  (Dkt. 10-8 at 3.)  The DHO based this ruling, in part, on the following:

- The written statement by the reporting officer that while conducting a search of secured locker assigned to inmate Walton, he discovered four cell phones in total concealed inside of two Head & Shoulders shampoo containers; that while also conducting a search of Walton's assigned bunk area he discovered an Aquafina water bottle with manufactured alcohol, which was verified using Alco Sensor Type III monitor; and a container with a leafy substance that tested positive for drugs.

- Petitioner's statement denying the incident report and claiming that his locker was unlocked and that the items discovered were not his.

- The fact that Petitioner waived the right to witnesses and staff representation.

- The fact that the reporting officer identified a phone number on Petitioner's phone list that was exclusive to him, and no other inmate at FCI-Fort Dix, on the recovered cellphone.

(*Id.* at 2-3.)

The DHO sanctioned Petitioner to the disallowance of 82 days good conduct time, as well as other disciplinary sanctions.  (Dkt. 10 ¶ 16; Dkt. 10-8 at 4.)  Petitioner was advised of his appeal rights.  (Dkt. 10-8 at 4.)

**D.    Appeal**

Walton attempted to file three administrative remedies appealing the DHO matter on October 19, 2020, November 9, 2020, and December 3, 2020—Administrative Remedy Nos. 1053035-Rl, -R2, and -R3.  These appeals were all procedurally rejected because he failed to attach the full DHO report decision.  (Dkt. 9 ¶ 13; Dkt. 9-1 at 3-4.)

The DHO report decision was finally delivered to Walton on December 10, 2020. (Dkt. 10-8 at 4.)

On December 21, 2020, Walton filed Administrative Remedy No. 1061981-Rl (dated December 16, 2020), challenging Incident Report No. 3302174 at the regional administrative level.  (Dkt. 9 ¶ 14; Dkt. 9-2 at 2-3.)  Walton's challenge focused on the fact that he was not provided with a copy of the DHO report within 15 days as set forth by BOP Program Statement 5270.09, which according to him amounted to a violation of his right to due process on the following basis:

> The specific due process protection or procedural error which occurred to me was the failure of the Bureau to provide me with a written statement, in accordance with Bureau Program Statement, 5270.09, subsection 54I.8(h) [sic], as to the evidence relied on and the reason for the decision, resulting in prejudice toward me and prevented me from initiating a [meaningful] appeal in obtaining evidence in support of an appeal.

(*Id.* at 3 (alteration in original).)  Petitioner further noted that he was unable to obtain unidentified witnesses and evidence in support of his appeal.  (*Id.*)

On January 7, 2021, the Regional Administrative Remedy Appeal was denied. (*Id.* at 1.)  The decision noted that the date for Petitioner's appeal had been extended as a

result of the December 10, 2020 delivery of the DHO report.  (*Id.*)  The decision also provided as follows:

> In accordance with Program Statement 5270.09, Inmate Discipline Program, the DHO will give the inmate a written copy of the decision and disposition, ordinarily within 15 working days of the decision. Due to administrative oversight and your transfer to a different facility, you did not receive a copy of the DHO report for incident report number 3302174.  The DHO report was obtained and delivered to you on December 10, 2020.

(*Id.* at 1.)  Petitioner was notified of his right to appeal the regional administrative level decision to the Office of General Counsel.  (*Id.*)

On January 26, 2021, Petitioner filed an appeal with the Office of General Counsel, making similar arguments propounded at the regional level, including arguing a violation of due process due to the delay in receiving the DHO report "forestalled me from, obtaining a witness statement(s) from my cell mates acknowledging the contraband to some-one else."  (Dkt. 9-3 at 2-3.)  The April 8, 2021 denial of the appeal at the national administrative level found that "the determination of the DHO is reasonable and supported by the evidence."  (*Id.* at 1.)  As it relates to Petitioner's due process arguments, the decision at the national level found that:

> Policy in part states, "The DHO gives the inmate a written copy of the decisions and disposition, **ordinarily** within 15 work days of the decision". Policy does not dictate that the inmate shall receive a copy of the DHO report within 15 days. This provision is not an absolute deadline and does not create a Due Process of rights [sic] violation.  Although you allege to have not received your DHO Report in a timely manner, you have provided no evidence to suggest staff hindered your access to the Administrative Remedy Program. By the filing of this appeal, it is evident you have had significant and meaningful access to the Administrative Remedy Program regarding this incident report.

(*Id.*)

## II.   <u>ANALYSIS</u>

As part of the Petition and its supporting materials, Walton acknowledges that he received the DHO report and that he was able to exhaust his administrative remedies. (Dkt. 1 at 1-3; Dkt. 14 at 3.)  Walton complains that the 418-day delay after the DHO hearing in obtaining the DHO report violated his procedural due process rights by failing to provide him with a timely copy of the controlling DHO hearing report in accordance with its 15-day time frame.  (*Id.* at 3-4.)  According to Petitioner, this purposeful delay on the part of the BOP effectively prejudiced him and forestalled his opportunity to advance a meaningful appeal, thereby denying him the due process protections afforded by the United States Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 94 (1974)—namely a necessary witness statement from one of his former cellmates.  (*Id.* at 3-6; Dkt. 14 at 2-3.) Petitioner does not identify the cellmate or the testimony that this individual would have provided, and asserts that he has no obligation to share what the contents of the witness's statement would have been had the individual testified.  (Dkt. 14 at 3.)  He further argues, citing to *Wolff*, that he has a due process right to call witnesses at his appeal.  (*Id.* at 2.)

Walton seeks an order from this Court expunging the incident report and its supporting documents, and restoring his 82 days of revoked good conduct time credits. (Dkt. 1 at 7.)

In his reply, Walton also asks, in the alternative, for an evidentiary hearing in order: (1) to contest the assertion that he did not present witnesses at the DHO hearing, asserting that he asked for two witnesses but was told they could not be brought to the hearing because of staff shortages; and (2) to contest the assertion that he violated Code

108, Possession of Hazardous Tool, or Code 113, Possession of Drugs/Alcohol, since he was not in personal possession or control of the contraband, as they were in his locker and cell, that were accessible to others, and not on his person. (*Id.* at 5.)

## A.    Due Process

For relief to be granted under 28 U.S.C. § 2241, Walton must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). It is well-settled that "[a] necessary predicate for the granting of federal habeas relief [to a petitioner] is a determination by the federal court that [his or her] custody violates the Constitution, laws, or treaties of the United States." *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (citing 28 U.S.C. § 2241).

Depriving an inmate of good conduct time for disciplinary reasons "implicates a liberty interest that is protected by the Due Process Clause." *See Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002) (citation omitted). An inmate does not lose the right to due process of law simply because he is incarcerated. However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

The Supreme Court "has consistently held that some kind of hearing is required at some time before a person is finally deprived of his property interest," and applied that reasoning to deprivation of good time in response to a disciplinary proceeding where good time deprivation was provided for by statute. *Id.* at 557-58. In *Wolff*, the Supreme Court held that where certain basic procedural elements of the discipline process exist,

the Constitution's guarantee of procedural due process would be satisfied. *Wolff* held that the elements required for due process include: (1) written notice of the charged misconduct at least 24 hours before the hearing; (2) an impartial hearing body; (3) an opportunity to present witnesses and documentary evidence; (4) assistance for illiterate inmates or in complex cases; and (5) a written statement of the evidence relied upon and reasons for the sanction. 418 U.S. at 564-71. Finally, due process requires that there must be "some evidence" supporting a guilty decision on a disciplinary charge brought against a prisoner. *Id.; see also Ragan v. Lynch*, 113 F.3d 875, 876 (8th Cir. 1997) ("When inmates are entitled to due process before being disciplined, they must receive: (1) advance written notice of the charges; (2) an opportunity to present evidence in their defense; (3) a written statement by the fact finder of the reasons for the action; and (4) a decision supported by some evidence in the record."). According to Supreme Court, the purpose of a written statement by the fact finder of the reasons for the action is as follows:

> We also hold that there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action. *Morrissey*, 408 U.S., at 489, 92 S.Ct., at 2604. . . . Written records of proceedings will thus protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others.

*Wolff*, 418 U.S. at 564-65.

BOP Program Statement 5270.09 provides supplemental guidance regarding internal prison incidents and investigations, as set forth in Chapter 2, § 541.8 of the Code of Federal Regulations. As to issues relevant to the Petition, Program Statement 5270.09 provides: "The DHO prepares a record of the proceedings. The evidence, decision, and reasons for actions taken must be specific, unless this would jeopardize security. The DHO gives the inmate a written copy of the decisions and disposition, ordinarily within 15 work days of the decision." (Dkt. 10-1 at 36.) There is nothing in BOP Program Statement 5270.09 or Administrative Remedy Program, 28 CFR Part 542, Subpart B (pertaining to appeals), affording the right of an inmate to present witness statements on appeal that were not presented to the DHO.

Walton has not identified any of the *Wolff* requirements that were not met by the prison. As set forth above, there is no right under *Wolff* affording an inmate to provide new evidence, including evidence from witnesses during an appeal that would have been available to present to the DHO. Moreover, Petitioner concedes that he received a written statement of the evidence relied upon and reasons for the sanction as required by *Wolff*, albeit very belatedly. Instead of identifying a deficiency in the *Wolff* requirements, Walton argues that he was not afforded due process because the prison failed to follow its own internal procedures for disciplinary issues. Specifically, Walton alleges that the BOP violated Program Statement 5270.09 because he did not get a copy of the operative incident report within 15 days of the issuance of the DHO report. However, a failure to follow BOP policy is not, by itself, enough to support a finding that procedures lacked due process under the Fifth Amendment. *See Jordan v. Outlaw*, No. 2:11CV00176

11

DPM/BD, 2012 WL 1790040, at *1, 4 (E.D. Ark. Mar. 21, 2012) (Petitioner "has no

stand-alone due process right in having prison officials follow prison policy.") (citing

*Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)); *see also Olim v. Wakinekona*, 461

U.S. 238, 250-51 (1983) ("The State may choose to require procedures for reasons other

than protection against deprivation of substantive rights, of course, but in making that

choice the State does not create an independent substantive right.") (footnote omitted);

*Jacobs v. Barnes*, No. 20-CV-00551 (PAM/HB), 2020 WL 5215294, at *3 (D. Minn.

Aug. 3, 2020), *R. & R. adopted*, 2020 WL 5204272 (D. Minn. Sept. 1, 2020), *aff'd*, 857

F. App'x 896 (8th Cir. 2021) (finding that "prison regulations in and of themselves do not

confer due process rights.") (citation omitted).

Moreover, the use of the word "ordinarily" in terms of giving an "inmate a written

copy of the decisions and disposition, ordinarily within 15 work days of the decision"

indicates that the 15-day notice period is not mandatory, and does not in and of itself

provide a basis for habeas relief, especially since Walton ultimately obtained the

opportunity to administratively appeal the decision. *See Leon v. Grant*, No. CIV-21-589-

HE, 2021 WL 5239955, at *2 (W.D. Okla. Sept. 23, 2021), *R. & R. adopted*, 2021 WL

5237261 (W.D. Okla. Nov. 10, 2021) ("Even liberally construing Petitioner's claims to

allege that staff violated BOP regulations by failing to provide him with a copy of the

DHO report within the advisory fifteen-day period, the staff's failure to abide by such

internal directives does not give rise to a claim for habeas relief.") (citations omitted);

*Shahan v. Ormond*, No. 3:18CV200, 2018 WL 6681210, at *5 (E.D. Va. Dec. 19, 2018),

*aff'd*, 778 F. App'x 217 (4th Cir. 2019) (finding that while BOP staff may have "violated

BOP Program Statement 5270.09 by failing to provide him with a copy of the DHO Report within the advisory fifteen-day period, the BOP's failure to abide by internal directives of this ilk does not give rise to a claim for habeas relief.") (citing *Mendoza v. Tamez*, 451 F. App'x 715, 717-18 (10th Cir. 2011); *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991)); *see generally, Stanko v. Rios*, No. 08-cv-3102 (JNE/JJG), 2009 WL 1066021, at *6 (D. Minn. Apr. 20, 2009) (citation omitted), *aff'd*, 366 F. App'x 706 (8th Cir. 2010).

With respect to other due process considerations, courts have found that "[i]t is not the mere fact of the government's delay that violates due process, but rather the prejudice resulting from such delay." *Consolidation Coal Co. v. Borda*, 171 F.3d 175, 183 (4th Cir. 1999) (citation omitted); *see also Crawley v. Wilson*, No. 2:11cv542, 2012 WL 2505118, at *5 (E.D. Va. May 16, 2012) (citing *Consolidation Coal*, 171 F.3d at 183) (finding that where a prisoner's DHO report was delayed but he was still able to appeal the DHO's decision, there was no due process violation because there was no prejudice resulting from the delay in receiving his report). Indeed, in the present context of an inmate's delayed receipt of the DHO's report, courts have found that inmates do not suffer any prejudice when they receive the DHO's report months after the hearing, and that such a multi-month delay does not by itself constitute a due process violation. *See, e.g.*, *Griffin v. Ebbert*, 640 F. App'x 181, 184 (3d Cir. 2016) (concluding that there was no due process violation when an inmate received the DHO's report eighteen months after his hearing "because [the inmate] had not demonstrated that he suffered any prejudice as a result of the eighteen-month delay, [and] he had received the process he

was due under *Wolff*."); *see also Morris v. Wilson*, No. 3:11-cv-360, 2012 WL 628612, at

*4 (E.D. Va. Feb. 27, 2012) (finding that the petitioner did not establish prejudice from

nine-month delay, as "the BOP afforded [the petitioner] the opportunity to appeal, and

[he] took advantage of it").  At least one court within this District has held that a late

DHO report does not violate due process as long as the inmate has the opportunity to

utilize the administrative process:

> Petitioner argues that his due process rights were violated because he was
> provided a written report of the DHO decision almost six months after the
> decision was made.  (Pet. at 8-9.)  Federal regulations provide that "the DHO
> shall give the inmate a written copy of the decisions and disposition,
> ordinarily within 10 days of the DHO's decision."  28 C.F.R. § 541.17(g).
> The Court finds that this delay in providing Petitioner with the DHO report
> did not violate Petitioner's due process rights.  The Supreme Court in *Wolff*
> explained that a written statement of the evidence relied on and reasons for
> the disciplinary action would allow for review of the DHO's decision.  *Wolf*
> [sic], 418 U.S. at 564-565.  Although Petitioner did not receive the report
> within ten days of the DHO hearing, Petitioner was still allowed to appeal
> the decision within twenty days of his receipt of the report.  Petitioner did
> appeal the DHO's decision to the Regional and Central Office Levels.
> (Buege Decl. Attach. F.)  The Court finds that because Petitioner was still
> able to utilize the administrative appeal process after receiving the DHO
> report, his due process rights were not violated.  The record shows that
> Petitioner was afforded the basic procedural safeguards required by *Wolff*.

*Rios v. Fisher*, No. CIV. 10-3313 PJS/FLN, 2011 WL 3610455, at *4 (D. Minn. May 25,

2011), *R. & R. adopted*, 2011 WL 3607149 (D. Minn. Aug. 15, 2011).

Petitioner relies on *Hawkins v. Sproul*, No. 18-CV-2206-NJR, 2020 WL 1905170

(S.D. Ill. Apr. 17, 2020), where the court restored good time credits in a situation where

the petitioner was not provided a DHO report until the habeas action was filed:

> The failure to provide the DHO report violates one of the minimal due
> process requirements set forth in *Wolff*.  "The essence of due process is the
> requirement that 'a person in jeopardy of serious loss (be given) notice of the

case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-172 (1951) (Frankfurter, J., concurring)). Without the DHO's statement of the evidence relied upon and the reasons for the guilty finding, Hawkins did not have the notice he needed in order to prepare his appeal to refute that evidence and reasoning. Hawkins's transfer to another prison, while the DHO report sat undelivered, cut him off from the ability to obtain his former cellmate's declaration admitting ownership of the contraband. Without that admission, Hawkins had no way to mount a meaningful challenge to the disciplinary sanction. Even if Hawkins were to have sought administrative review of the matter after finally receiving the DHO report in February 2019, he still had no opportunity to get the statement from the former cellmate. (Doc. 13, p. 4.) The BOP's failure to comply with the *Wolff* due process requirement prejudiced – indeed, foreclosed – Hawkins's ability to appeal the merits of the disciplinary action.

2020 WL 1905170, at *5.

The decision in *Hawkins* relies on *Mathews v. Eldridge*, in which the Supreme Court did not deal with inmate discipline, but instead the issue was "whether the Due Process Clause of the Fifth Amendment requires that prior to the termination of Social Security disability benefit payments the recipient be afforded an opportunity for an evidentiary hearing." *Mathews*, 424 U.S. at 323. While the Court does not dispute that an inmate has a due process right to notice of the case against him, Walton was provided notice in accordance with *Wolff* by virtue of the Incident Report, which set forth the violations he was accused of, as well as the supporting evidence; he was advised of his rights related to the disciplinary hearing (including the right to call witnesses); he was provided with a Notice of Disciplinary Hearing; he appeared at the hearing choosing to waive his previously requested witnesses; he received a late DHO report; and was allowed to exhaust the administrative appeals process. In other words, Walton had sufficient notice of the case against him for the purposes of due process. The *Hawkins*

decision reads into due process protections afforded to inmates a right to present witnesses or other evidence during the appeals process that is not recognized by the Supreme Court.[1]  *See Wolff*, 418 U.S. at 564-71.  Regardless, unlike the petitioner in *Hawkins* who asserted that he no longer had an opportunity to get the statement from the former cellmate who he claimed would admit to ownership of the contraband at issue, Walton does not establish prejudice as he does not specify in his Petition from whom he would have obtained a statement and the content of that statement.  Moreover, Walton does not assert that he requested access to witnesses from FCI-Fort Dix and was denied for any reason.  As best as this Court can discern, based on Walton's administrative appeals, it is his position that similar to the petitioner in *Hawkins*, that but for the delay in receiving the DHO report, he would have been able to obtain witness statements from his unidentified cellmates that the contraband belonged to someone else.  (Dkt. 9-3 at 3.)  Given that Petitioner had the opportunity to present witnesses before the DHO, the Court will not overturn Walton's loss of good time credit based on threadbare, conclusory, and post-hoc self-serving assertions.  It is important to note that when Walton initially proposed witnesses for the hearing before the DHO, he did not represent that the

---

[1]    The Court notes that some courts have gone so far as to find that inmates do "not enjoy a procedural due process right to an appeal." *Rouse v. Andrews*, No. 3:21CV63 (DJN), 2022 WL 258457, at *5 (E.D. Va. Jan. 27, 2022) (quoting *Coor v. Stansberry*, No. 3:08CV61, 2008 WL 8289490, at *2 (E.D. Va. Dec. 31, 2008), citing *Wolff*, 418 U.S. at 563-71; *Johnson v. Goord*, 487 F. Supp. 2d 377, 386 (S.D.N.Y. 2007)); *see also Salam v. Delaney*, No. 1:12-CV-01040, 2015 WL 5693133, at *9 (W.D. Ark. Sept. 28, 2015) ("Plaintiff also argues that he was deprived of the right to appeal the disciplinary conviction. The right to appeal is not one of the procedures required to comport with Due Process.") (citations omitted).

witnesses would have claimed that the contraband belonged to someone else, only that they would only have testified that he was working when the incident transpired.[2]  (Dkt. 10-6.)

Accordingly, the Court finds that Petitioner was afforded sufficient procedural due process.

## B.   Sufficiency of the Evidence

As stated previously, the due process clause also requires that a prison disciplinary board establish its factual findings at the hearing according to the standard of "some evidence."  *Goff v. Dailey*, 991 F.2d 1437, 1442 (8th Cir. 1993).  The Supreme Court has described the "some evidence" standard as follows:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Hill*, 472 U.S. at 455-56 (emphasis added).

The power of federal courts to review the decision of the prison disciplinary hearing officer is limited because "[t]he federal courts are not part of the appellate process for prison disciplinary proceedings."  *Toombs v. Hicks*, 773 F.2d 995, 997 (8th

---

[2]     Petitioner argues in his reply that his ability to call his two witnesses during the DHO hearing was frustrated on two occasions because sufficient staff was not available, so he chose to proceed without them.  (Dkt. 14 at 4-5.)  Even assuming this was true, nothing precluded him from seeking further continuance of the disciplinary proceeding (especially since he had not been disciplined at that point in time), and instead chose to waive that right prior to the hearing.  (Dkt. 10-7.)  Petitioner does not dispute the fact of his waiver, and no hearing on this issue is required.

Cir. 1985) (citing *Courtney v. Bishop*, 409 F.2d 1185, 1187 (8th Cir. 1969)).  It is

important to note that the role of this Court is not to reweigh the evidence presented as

part of the disciplinary process.  *Hill*, 472 U.S. at 455.  The evidentiary requirement in

reviewing prison disciplinary actions is met even when the evidence "might be

characterized as meager;" it simply must not be "so devoid of evidence as to make the

findings of the institution without support or otherwise arbitrary."  *Flowers v. Anderson*,

661 F.3d 977, 980 (8th Cir. 2011) (quoting *Hill*, 472 U.S. at 457); *see also Gomez v.

Graves*, 323 F.3d 610, 612 (8th Cir. 2003) ("[C]ourts are to give deference to prison

officials and should intercede in prison discipline cases only when the sanctions are

wholly unsupported by the record").  "'Some evidence" can include statements or

testimony, a written account of the incident, or the incident report.  *Hill*, 472 U.S. at 456-

57.  Even when there is substantial evidence to the contrary, a disciplinary committee

may take disciplinary action.  *See Hrbek v. Nix*, 12 F.3d 777, 781 (8th Cir. 1993)

(emphasis added); *see also Johnson v. Outlaw*, No. 2:11CV00128-BD, 2012 WL 786259,

at *3 (E.D. Ark. Mar. 9, 2012), *aff'd*, 489 F. App'x 144 (8th Cir. 2012) (upholding

disciplinary conviction related to possession of a cell phone despite confession of another

inmate that supported dismissal of charge).

　　　Here, the record contains sufficient evidence to support that Petitioner violated

Code 108, Possession, Manufacture, Introduction, or Loss of a Hazardous Tool; and Code

113, Possession of Any Narcotics, Marijuana, Drugs, Alcohol, Intoxicants, or Related

Paraphernalia, Not Prescribed for the Individual by the Medical Staff.  As set forth above,

Petitioner argued in response to the Incident Report that "I was at work.  Items had been

found in common area.  My locker was not locked.  I worked at food service.  I have

witness [sic] I was at work." (Dkt. 10-4 at 1.)  In addition, he claimed before the DHO

that "My locker was not locked, and the stuff found inside is not mine."[3] (Dkt. 10-8 at

1.)  Although Petitioner asserts that his locker containing the cell phones was unlocked

and therefore accessible to presumably everyone, the DHO relied upon the written

incident report from the reporting officer that he discovered the cell phones while

conducting a search of a <u>secured</u> locker assigned to Walton and that fact that the

reporting officer identified a phone number on Petitioner's phone list that was exclusive

to him, and no other inmate at FCI-Fort Dix, on at least one of the recovered cellphones.

(Dkt. 10-8.)  As stated previously, testimony, a written account of the incident, or the

incident report can serve as "some evidence" for the purposes of due process, and this

Court cannot conduct an independent assessment of credibility of witnesses, or weighing

of evidence; even if evidence is "meager." *Hill*, 472 U.S. at 455-57; *see also Johnson*,

489 F. App'x at 145; *Maldonado-Maldonado v. Cole*, No. 019CV02402JRTKMM, 2019

WL 7756102, at *4 (D. Minn. Dec. 13, 2019), *R. & R. adopted*, 2020 WL 420008 (D.

Minn. Jan. 27, 2020) ("It is not appropriate for this Court to reassess the credibility of any

witnesses or to reweigh the evidence in applying the some-evidence standard.") (citations

omitted).

---

[3]     The Court notes that Petitioner does not contest that the bottle or the green leafy
substance discovered in his bunk area contained alcohol and narcotics, respectively,
pursuant to drug testing. *See Triplett v. Fondren*, No. 07-2343 (JRT/RLE), 2008 WL
1819183, at *1, 5 (D. Minn. Apr. 23, 2008) (upholding discipline received for possession
of marijuana after a NIK test).

Petitioner's argument in his reply that his good time credit should be restored because he was not in personal possession of the contraband is also of no avail.[4]  Under a theory of constructive possession, courts have "uniformly held that the discovery of contraband in a shared cell constitutes 'some evidence' of possession sufficient to uphold a prison disciplinary sanction against each inmate in the cell, including depriving that inmate of his or her liberty interest in good time credits." *Denny v. Shultz*, 708 F.3d 140, 145 (3d Cir. 2013).  Indeed, the "Eighth Circuit has accepted the theory of 'collective culpability,' meaning that 'contraband found in a shared area' of a prison can constitute 'some evidence' to support sanctions in prison discipline cases.'" *Collier v. Fisher*, No. CIV. 13-0379 JRT/JJK, 2013 WL 3716643, at *7 (D. Minn. July 12, 2013) (quoting *Flowers*, 661 F.3d at 980).  In other words, there is no requirement that the contraband needed to be found on Walton's person in order for him to have "possession" for the purposes of violations of Code 108 and 113.  Here, some evidence in the record supports the finding that the contraband phones were found in a secured locker assigned to Petitioner in violation of Code 108.[5]  *See Mason v. Sargent*, 898 F.2d 679, 680 (8th Cir. 1990) (upholding discipline imposed for contraband discovered in a shared locker).

---

[4]    The Court notes that these claims could be summarily dismissed, as not only did Petitioner fail to exhaust these claims, but it is not appropriate to raise new grounds for habeas relief in a reply. *See Scott v. Fondren*, No. CIV. 09-762 RHK/JJG, 2009 WL 3855926, at *3 (D. Minn. Nov. 17, 2009) (citations omitted).  However, since Respondent raised the issue of the sufficiency of the evidence supporting the DHO's decision in its opposition, the Court will address these arguments.

[5]    Petitioner concedes that the locker can be secured as by asserting that even if the locker was secured, the BOP had a key for the locker.  (Dkt. 14 at 5.)

In addition, the alcohol and narcotics were found in Petitioner's bunk area. Petitioner asserts in his reply that the bunk area was accessible to 150 other inmates. However, the fact that the items were found in his bunk space—i.e., in his "living space," even if all of the other inmates had access, supports a finding of constructive possession. *Flannagan v. Tamez*, No. 09-10322, 2010 WL 759159, at *2 & n.6 (5th Cir. Mar. 5, 2010); *Donahue v. Grondolsky*, Civil No. 08-5533, 2009 WL 3754045, *3, 5-6 (D.N.J. Nov. 2, 2009), *aff'd*, No. 10-1147, 2010 WL 3529301 (3d Cir. Sept. 13, 2010) (where prisoner argued he was "set up," constructive possession doctrine is not unreliable where inmate shared cell with three other inmates, cell had been searched earlier the same day, and contraband was found in unlocked cell to which 140 inmates had access); *Scott*, 2009 WL 3855926, at *2 ("[E]ven though other inmates might have had some access to the outlet, they did not have equal access, and Petitioner's unique degree of access is sufficient to establish his possession of the phone under the 'some evidence' standard.") (citations omitted); *Ebeck v. Anderson*, No. 09-3123-CV-S-GAF, 2009 WL 3062015, at *2 (W.D. Mo. Sept.18, 2009) (finding "some evidence" that contraband found under an inmate's bed belonged to the inmate, even though his bed was located in a common area and the petitioner was not present during the search); *Schulze v. Schultz*, No. 1:04-CV-06100, 2007 WL 1302434, at *2 (E.D. Cal. 2007) (holding that "some evidence" existed that an inmate possessed contraband hidden in his trash can, even though the trash can was located in a dormitory housing 120 inmates).[6]  This is especially the case here, as the

---

[6]    *Compare Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001) (Where "the only evidence linking Broussard to the bolt cutters is that they were found in an area in

"Inmate Rights and Responsibilities" portion of the A&O handbook under the Responsibilities section states that it is Petitioner's "responsibility . . . to keep your area free of contraband[.]" (Dkt. 10-4 at 1). *See Perez v. Rios*, No. CIV.A.7:08-171-KKC, 2009 WL 499141, at *2 (E.D. Ky. Feb. 27, 2009) (citations omitted) ("Here, the knives were found within Perez's cell. While Perez asserts that the knives did not belong to him, they were located within his cell, an area unquestionably within his control. In light of this fact, and the BOP's rule that inmates are responsible for ensuring that their cells remain free of contraband, there was clearly sufficient evidence to support the DHO's finding under Hill that Perez was in possession of a hazardous tool."). Given that the alcohol and alleged drugs were found in Walton's personal bunk area, the Court finds that there was "some evidence" to support the DHO's finding that Petitioner had possessed contraband in violation of Codes 113.

For all of the reasons stated above, the Court recommends denying the Petition.

**C.    Evidentiary Hearing**

Because the Court can resolve Walton's Petition by relying on the record, an evidentiary hearing is not necessary. *Wallace v, Lockhart*, 701 F.2d 719, 729-30 (8th Cir. 1983) ("[D]ismissal of the habeas petition without a hearing is proper where . . . the dispute can be resolved on the basis of the record.") (citation omitted).

---

which he worked, but to which approximately one hundred inmates had access," the "some evidence" standard was not met.).

### III.    **RECOMMENDATION**

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT**

**IS HEREBY RECOMMENDED** that:

1.    Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Dkt. 1)

be **DENIED**; and

2.    This action be **DISMISSED WITH PREJUDICE**.

DATED: April 22, 2022                 *s/Elizabeth Cowan Wright*
                                                   ELIZABETH COWAN WRIGHT
                                                   United States Magistrate Judge

### **NOTICE**

Filing Objections:  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  See Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).